```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                                )
                                      )    Chapter 7
JAYME J. HONKOMP,                     )
                                      )    Bankruptcy No. 09-02151
     Debtor.                          )
------------------------------------------------------------
IN RE:                                )
                                      )    Chapter 7
MICHAEL J. HAYES,                     )
PEGGY A. HAYES,                       )    Bankruptcy No. 09-01643
                                      )
     Debtors.                         )
```

**ORDER RE: U.S. TRUSTEE'S MOTIONS TO DISMISS**

These matters came before the undersigned on October 15, 2009 for hearings on U.S. Trustee's Motions to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) and (3). Attorney Frances Henkels appeared for Debtor Jayme Honkomp and for Debtors Michael and Peggy Hayes. Attorney John Schmillen represented the U.S. Trustee. After the presentation of evidence and argument, the Court took the matters under advisement. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

The U.S. Trustee filed similar motions in both of the captioned cases. He asserts that, by filing Reaffirmation Agreements for debt secured by luxury property, i.e. a boat and a camper, Debtors are evidencing bad faith for purposes of § 707(b)(3)(A). The U.S. Trustee argues the amounts Debtors agreed to pay for the boat or camper could generate significant payment to creditors in a Chapter 13 case. Debtors in both these cases rescinded the Reaffirmation Agreements prior to the hearing.

**FINDINGS OF FACT**
<u>Honkomp</u>, No. 09-02151

Debtor Jayme Honkomp filed his Chapter 7 petition on July 29, 2009. According to Schedules I and J filed that date, he has negative net monthly income of -$1,151.28. On September 6, 2009, Debtor filed a Reaffirmation Agreement with University of Iowa Credit Union. The Agreement reaffirms debt of $16,692.76 with 8.6% interest and monthly payments of $172.77.

The collateral for the debt is a 2008 Glastron boat, motor and trailer. The U.S. Trustee filed the Motion to Dismiss on September 9, 2009, asserting Debtor's reaffirmation of this debt evidences bad faith. On September 16, 2009, Debtor filed a Rescission of Reaffirmation Agreement and a response objecting to U.S. Trustee's Motion to Dismiss.

At the hearing, Debtor testified that he was swayed by his daughters' wishes when he decided to reaffirm the boat loan. He said his emotions got the best of him as boating was something he and his children enjoyed. Afterward, he realized he couldn't afford the boat payment. His job started to have occasional furloughs, his daughters both need braces, and he intends to sign up for health insurance for himself at the end of the year. Debtor stated he would have tried to make the payments by getting a part-time job, but he couldn't find one and his girls did not want him away from them on nights and weekends. He testified that signing the Reaffirmation Agreement was a mistake.

## FINDINGS OF FACT
### Hayes, No. 09-01643

Debtors Michael and Peggy Hayes filed their Chapter 7 petition on June 11, 2009. According to Schedules I and J filed that date, they have negative net monthly income of -$1,617.79. On September 2, 2009, Debtors filed a Reaffirmation Agreement with DuTrac Community Credit Union. The Agreement reaffirms debt of $14,384.97 with 8.99% interest and monthly payments of $383.00. The collateral for the debt is a 2007 Flagstaff camper. The U.S. Trustee filed the Motion to Dismiss on September 10, 2009, asserting Debtors' reaffirmation of this debt evidences bad faith. On September 25, 2009, Debtors filed a response objecting to U.S. Trustee's Motion to Dismiss and on September 28, 2009 they filed a Rescission of Reaffirmation Agreement

At the hearing, Debtor Michael Hayes testified that the Credit Union had deducted the camper payments from his check every month so he never really considered the money as income. He agreed that signing the Reaffirmation Agreement had been a poor decision. Debtors had tried to sell the camper but were unable to. Mr. Hayes testified that in the end they rescinded the Reaffirmation Agreement on the camper loan because the Credit Union wanted it back, Debtors couldn't sell it and they weren't using it. He also testified about reaffirming a debt on a boat with payments of $200 per month, but no such Reaffirmation Agreement appears in the case file.

2

Mr. Hayes stated when Debtors started getting into money trouble, he realized his income had to go to things like utilities and taking care of his family, which were more important than the camper. He thinks maybe it was too easy to have payments taken out for the camper before he got his check. Mr. Hayes candidly testified he made some costly mistakes such as buying costly vehicles, paying high interest, and refinancing a mortgage when he shouldn't have. Debtors used the camper for a getaway once in a while and Mr. Hayes thought they could keep it, feeling he had worked hard for it.

## CONCLUSIONS OF LAW

Three standards are set out in § 707(b) for determining whether dismissal for abuse is appropriate. In re Draisey, 395 B.R. 79, 80-81 (B.A.P. 8th Cir. 2008).

> First, a presumption of abuse may be found if the debtor's current monthly income reduced by a certain formula contained in § 707(b)(2)(A) is greater than an amount specified in that statutory section. Second, the Court may determine that abuse exists if, under § 707(b)(3)(A), the presumption referred to above does not arise or is rebutted, but the Court finds that the petition was filed in bad faith. Finally, the Court may find abuse after considering the totality of the circumstances of the debtors' financial situation. 11 U.S.C. § 707(b)(3)(B).

Id. The U.S. Trustee's Motion to Dismiss raises both "bad faith" and "totality of the circumstances" as grounds for dismissal.

When considering whether a Chapter 7 petition was made in bad faith under § 707(b)(3)(A), the Court focuses on the debtor's conduct. In re Booker, 399 B.R. 662, 667 (Bankr. W.D. Mo. 2009). When considering the § 707(b)(3)(B) totality of the circumstances, "the Court should consider primarily, if not exclusively, the Debtors' ability to pay." Booker, 399 B.R. at 667; see also In re Budig, 387 B.R. 12, 16 (Bankr. N.D. Iowa 2008) (actual ability to pay is important, if not primary consideration). These are similar to the pre-BAPCPA considerations of whether Chapter 7 relief should be denied based on a debtor's lack of honesty (bad faith) or lack of need (ability to pay). Booker, 399 B.R. at 667, citing In re Walton, 866 F.2d 981, 983 (8th Cir. 1989); see also In re Boatright, ---- B.R. ----, 2009 WL 2849543, at *3 (Bankr. W.D. Mo. Sep. 2, 2009) (noting the pre-BAPCPA ad hoc totality of circumstances "substantial abuse" analysis was codified in § 707(b)(3)).

3

Beyond ability to pay, courts consider a variety of factors when assessing the totality of the circumstances.  In re Newman, 2008 WL 2228746, at *2 (Bankr. D. Neb. May 29, 2008).  These include:

> whether the bankruptcy filing was precipitated by an unforseen catastrophic event, such as a sudden illness or unemployment; whether the debtor is eligible for relief under another chapter; whether there are non-bankruptcy remedies available to the debtor; whether the debtor can obtain relief through private negotiations; whether the debtor's proposed budget is excessive or unreasonable; whether the debtor has a stable source of future income; whether the debtor could provide a meaningful distribution in a Chapter 13 case; and whether the debtors' expenses could be reduced significantly without depriving them and their dependents of necessities.

Id.; In re Campbell, 2007 WL 1376226, at *4 (Bankr. N.D. Iowa May 07, 2007), citing In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989) (adopting similar factors pre-BAPCPA).

The Bankruptcy Code's means test explicitly allows debtors to deduct payments on account of secured debt for purposes of finding a presumption of abuse.  11 U.S.C. § 707(b)(2)(a)(iii).  Courts have dismissed cases under the totality of the circumstances, however, in situations where debtors make large payments on luxury items.  In re LeRoy, 2009 WL 357923, at *3 (Bankr. E.D. Wis. Feb. 12, 2009).  For example, in In re Brenneman, 397 B.R. 866, 874 (Bankr. N.D. Ohio 2008), the court stated that the debtors, by allocating almost $1,300 to service debt on two automobiles, "have gone a long way in demonstrating that they have some ability to repay their creditors."  The court dismissed the case under § 707(b)(3), stating that individuals such as the debtors, who seek to reaffirm a large amount of secured debt, are not viewed with favor in a § 707(b)(3) proceeding.  Id. at 875.  In In re Boyle, 412 B.R. 108, 2009 WL 3032464, at *1 (Bankr. W.D.N.Y. Sep. 11, 2009), the debtors reaffirmed debt of more than $52,000 secured by a 28-foot boat worth $37,500.  The court held:

> The debtors showed bad faith when they rejected the opportunities for repayment through Chapter 13, and instead chose to pursue the continued enjoyment of a luxury good.  Pursuant to 11 U.S.C. § 707(b)(3), this bad faith warrants a finding of abuse and the dismissal of this case.

4

Id. at *3; see also In re Carney, 2007 WL 4287855, at *4 (Bankr. N.D. Ohio Dec. 5, 2007) (finding reaffirmation of $36,000 camper loan makes more likely that expenses reported on Schedule J are substantially inflated.)

    Not every luxury item will have sufficient value to justify dismissal under § 707(b)(3). Boyle, 2009 WL 3032464, at *4. In LeRoy, the debtor reaffirmed a debt with monthly payments of $600 which was secured by his sole "extravagance," a vacant lot on which he intended to build an accessible home with his fiancee. 2009 WL 357923, at *4. Although the U.S. Trustee compared the vacant lot with payment on debt secured by "a vacation home, outfitted with a boat, jet skis, snowmobiles, all terrain vehicles and similar 'toys,'" the court did not find the debtor's circumstances demonstrated abuse. Id.

### ANALYSIS

    As stated at the hearing, this Court will not allow the reaffirmation of debt secured by luxury goods. Debtors who wish to retain luxury goods rather than pay their legitimate creditors are not the type of honest but unfortunate debtor who should benefit from Chapter 7 relief. The Court agrees with the cases which conclude that reaffirmation of luxury debt can be grounds for dismissal for bad faith or under the totality of the circumstances. In the instant cases, however, dismissal is not appropriate.

    Debtor Jayme Honkomp reaffirmed a $16,700 debt with monthly payments of $173 which was secured by a 2008 boat, motor and trailer. He later rescinded the Reaffirmation Agreement. Debtors Michael and Peggy Hayes reaffirmed a $14,400 debt with monthly payments of $383 which was secured by a 2007 camper. They also subsequently rescinded the Reaffirmation Agreement. The timing of the rescissions is suspect, coming after the U.S. Trustee filed Motions to Dismiss. The Court is willing, however, to accept the explanations of the Debtors that they realized they had made poor decisions when they decided to reaffirm the debts.

    In both of these cases, Debtors have negative monthly net income of more than $1,000. A review of Schedules I and J does not raise suspicions that income is understated or expenses are inflated. With a monthly deficit of $1,000, it is unlikely that Debtors would be able to make any payment in a Chapter 13 case, even with the absence of the boat and camper payments. U.S. Trustee has not raised any factors other than reaffirming luxury debt to support dismissal for abuse. In these circumstances, dismissal under § 707(b)(3) is not appropriate. However, even

though these cases are not subject to dismissal, Debtors would be well advised to carefully consider reaffirmation of luxury items. All such agreements will be carefully scrutinized and, if bad faith is found, the sanction of dismissal may well be the appropriate result.

    **WHEREFORE**, U.S. Trustee's Motions to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) and (3) are DENIED.

    DATED AND ENTERED: October 26, 2009

*/s/ Paul J. Kilburg*

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE